UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Regeneron Pharmaceuticals, Inc.,<br><br>    Plaintiff/Counterclaim Defendant<br><br> vs.<br><br>Merus N.V.,<br><br>    Defendant/Counterclaim Plaintiff | Civil Action No. 14-CV-1650 (KBF) |

# MERUS' REPLY BRIEF IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES, EXPERT FEES AND COSTS

# CONTENTS

I. INTRODUCTION ...................................................................................................... 1

II. REGENERON'S "EXTRAORDINARY" LITIGATION MISCONDUCT MAKES THIS CASE EXCEPTIONAL ........................................................................ 1

III. REGENERON'S EXCEPTIONAL MISCONDUCT PERVADED THE CASE FROM START TO FINISH .................................................................................. 3

IV. THE COURT'S ADVERSE INFERENCE DOES NOT IMMUNIZE REGENERON FROM SANCTIONS ........................................................................ 5

V. MERUS SHOULD BE AWARDED ATTORNEYS' FEES AND COSTS FOR THE ENTIRE CASE ........................................................................................ 7

    A. Merus should be awarded attorneys' fees, including for Regeneron's appeal ................ 7

    B. Merus should be awarded its expert fees and costs ............................................................ 8

VI. CONCLUSION ........................................................................................................ 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Action Star Enters. Co., Ltd. v. KaiJet Tech. Int'l, Ltd.*,
  No. CV 12-08074 BRO, 2015 WL 12752877 (C.D. Cal. June 24, 2015) ......................... 7

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
  No. 06cv2433 DMS (KSC) (S.D. Cal., May 7, 2015) ........................................................ 3

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
  23 F.3d 374 (Fed. Cir. 1994) ............................................................................................. 9

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,
  No. 95 CIV. 8833 RPP, 2002 WL 1733681 (S.D.N.Y. July 26, 2002) ............................. 9

*Checkpoint Sys., Inc. v. All-Tag Security S.A.*,
  No. 01–2223, 2015 WL 4941793 (E.D. Pa. Aug. 19, 2015) *rev'd on other grounds*,
  858 F.3d 1371 (Fed. Cir. 2017) ......................................................................................... 8

*Del Mar Avionics, Inc. v. Quinton Instrument. Co.*,
  897 F.2d 539, 1990 WL 12996 (Fed. Cir. Feb. 16, 1990) ................................................. 7

*Enzo Biochem, Inc. v. Calgene, Inc.*,
  188 F.3d 1362 (Fed. Cir. 1999) ......................................................................................... 4

*HipSaver Co. v. J.T. Posey Co.*,
  497 F. Supp. 2d 96 (D. Mass. 2007) ................................................................................. 6

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
  876 F.3d 1372 (Fed. Cir. 2017) ..................................................................................... 7, 8

*MarcTec, LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012) ........................................................................................... 9

*Mathis v. Spears*,
  857 F.2d 749 (Fed. Cir. 1988) ....................................................................................... 6, 9

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
  726 F.3d 1359 (Fed. Cir. 2013) ......................................................................................... 2

*Octane Fitness LLC v. ICON Health and Fitness Inc.*,
  134 S.Ct. 1749 (2014) ............................................................................................... 1, 2, 6

*Orbit Irrigation Prods., Inc. v. Sunhills Int'l, LLC*,
　No. 1:10-CV-113 TS, 2015 WL 7740405 (D. Utah Nov. 30, 2015) ...................................... 6

*Park-In Theatres, Inc. v. Perkins*,
　190 F.2d 137 (9th Cir. 1951) ............................................................................................... 7

*Qualcomm Inc. v. Broadcom Corp.*,
　No. 05cv1958-B (BLM), 2007 WL 9677112 (S.D. Cal. Oct. 29, 2007) ............................... 9

*Regeneron Pharm., Inc. v. Merus N.V.*,
　864 F.3d 1343 (Fed. Cir. 2017) ................................................................................... 2, 3, 5

*Rohm & Haas Co. v. Crystal Chemical Co.*,
　736 F.2d 688 (Fed. Cir. 1984) ............................................................................................. 7

*Romag Fasteners, Inc. v. Fossil, Inc.*,
　866 F.3d 1330 (Fed. Cir. 2017) ........................................................................................... 6

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
　549 F.3d 1381 (Fed. Cir. 2008) ........................................................................................... 9

*Taltech Ltd. v. Esquel Enters. Ltd.*,
　604 F.3d 1324 (Fed. Cir. 2010) ........................................................................................... 4

*Therasense, Inc. v. Becton, Dickinson & Co.*,
　745 F.3d 513 (Fed. Cir. 2014) ............................................................................................. 7

*Trs. of Boston Univ. v. Everlight Elecs. Co., Ltd*,
　No. 12-CV-11935-PBS, 2016 WL 3976603 (D. Mass. July 22, 2016) ................................ 6

**Statutes**

35 U.S.C. § 285 ............................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 37 ................................................................................................................ 5, 8

**I.      INTRODUCTION**

Regeneron's Opposition entirely fails to rebut Merus' showing that this case is exceptional and warrants the award of attorneys' fees, expert fees, and costs. The record is clear: from the outset, Regeneron engaged in an extensive, pervasive "pattern of misconduct" (D.I. 423 at 95) in an effort to impose maximum burden on Merus, disrupt Merus' business, hide its meritless positions, and ultimately to try and hide its inequitable conduct before the USPTO. Regeneron cannot and does not contest the facts of its discovery abuses and disingenuous litigation tactics, that it misrepresented facts to the Court, abused privilege multiple times, and submitted trial testimony on inequitable conduct, while withholding "directly contradictory" documents. (*Id.* at 111.) Tellingly, Regeneron essentially limits its Opposition to the inequitable conduct issue, conceding that awarding fees is appropriate through claim construction. Thus, the only question for the Court is whether Merus should be awarded fees for Regeneron's misconduct following claim construction. To rebut this fair and proper result, Regeneron relies on mischaracterization of the facts and misstatements of the law.

Regeneron engaged in misconduct that the Court has characterized as "extraordinary by any standards" and "on display soon after this case was filed and *continued into the trial*." (*Id.* at 2-3, 64) (emphasis added). This, alone, makes this case "stand out from others" and exceptional within the meaning of 35 U.S.C. § 285. Fairness now dictates that Merus should recover all its fees and costs.

**II.     REGENERON'S "EXTRAORDINARY" LITIGATION MISCONDUCT MAKES THIS CASE EXCEPTIONAL**

An exceptional case is "simply one that stands out from others with respect to . . . the unreasonable manner in which the case was litigated" when considering "the totality of the circumstances." *Octane Fitness LLC v. ICON Health and Fitness Inc.*, 134 S.Ct. 1749, 1756 (2014). As recounted in Merus' opening brief, this Court's opinions, and the Federal Circuit's decision on appeal, Regeneron repeatedly abused privilege, violated the Federal Rules of Civil Procedure, the Court's

Individual Patent Rules and numerous Court orders, withheld compelled discovery, misrepresented its production, and submitted trial testimony that waived privilege while concealing contradictory evidence going to the heart of the inequitable conduct issue of intent. (*See, e.g.*, D.I. 411 at 7 (withheld documents "directly relevant to the topics as to which privilege has been waived" and "containing statements directly contradictory" to Regeneron's positions. *See also* D.I. 423 at 2–3, 93–114; D.I. 426 at 6–17; Transcript of 6/10/2015 *In Camera* Hearing; *Regeneron Pharm., Inc. v. Merus N.V.*, 864 F.3d 1343, 1356–64 (Fed. Cir. 2017)). Indeed, the Court has already found that Regeneron's "shenanigans" and attempts to "'game' the system" were "extraordinary by any standards." (D.I. 423 at 64, 95). It is difficult to imagine a case more exceptional than this.

Regeneron did not contest any of the Court's findings regarding its misconduct on appeal and does not do so here. In fact, when asked by the Federal Circuit panel why these findings were uncontested, Regeneron's counsel conceded they are irrefutable, noting: "It's too hard under the standard of review for us to raise those." Oral Argument at 3:30–3:45, *Regeneron Pharm., Inc. v. Merus N.V.*, 864 F.3d 1343 (Fed. Cir. 2017) (No. 16-1346). http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2016-1346.MP3. That admission says it all and is more than is required for a finding of an exceptional case. *See, e.g.*, *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1366 (Fed. Cir. 2013) (affirming exceptional case award, noting that litigation misconduct "alone may suffice to make a case exceptional").

Seeking to avoid the consequences of its tactics, Regeneron argues that its inequitable conduct positions were not "'frivolous' or 'objective[ly] unreasonable.'" (D.I. 466 at 8.) But this argument misses the point. The Supreme Court has squarely rejected that a party must show objective baselessness before prevailing on a motion for attorneys' fees. *Octane Fitness*, 134 S.Ct. at 1756. Merus has shown, and the Court has agreed, that Regeneron engaged in a pattern of extraordinary litigation

2

misconduct, making this case exceptional within the meaning of § 285.[1]

## III. REGENERON'S EXCEPTIONAL MISCONDUCT PERVADED THE CASE FROM START TO FINISH

Regeneron contends that Merus' decision to pursue inequitable conduct, rather than accepting a final judgment in its favor on infringement and validity should somehow mitigate Merus' total recovery of attorneys' fees. (D.I. 466 at 11.) That is nonsense. Regeneron compelled Merus to press forward. When Regeneron sought an early appeal, it did not proffer a covenant not to sue. Rather, its acknowledged goal was to quickly appeal the Court's adverse rulings in the hope of continuing its claim against Merus. Resolving Merus' inequitable conduct claim would efficiently eliminate that threat to Merus, along with the prospect that Regeneron could wield the unlawfully procured patent against others. Regeneron's motion for final judgment also came while it was subject to a court order to produce documents as to which it had waived privilege, and while it was caught making numerous misrepresentations (D.I. 242), forcing Merus to press forward and not permit Regeneron to avoid the consequences of its misconduct. Moreover, a foundational argument for resolving the inequitable

---

[1] While not the standard, Regeneron's defense to inequitable conduct—obscuring evidence and misrepresenting the record—was, in fact, objectively baseless. Regeneron cites Judge Newman's dissent, the Federal Circuit's precedential opinion, and a handful of *amici curiae* briefs to argue otherwise. But none of these allegations are on point. Judge Newman's dissent "does not tend toward a finding that the case is not exceptional." *See, Am. Calcar, Inc. v. Am. Honda Motor Co.*, No. 06cv2433 DMS (KSC) (S.D. Cal., May 7, 2015) (order granting motion for exceptional case status under 35 U.S.C. § 285). The more salient fact is that Regeneron's petition for rehearing *en banc* was denied by ten of twelve Federal Circuit judges. Further, the precedential designation of the panel decision was no endorsement of Regeneron's arguments, but notice to others that litigation misconduct aimed to hide inequitable conduct has consequences. Finally, Regeneron obtained *amici curiae* support only after demanding the record be sealed and refusing to identify for Merus the parties it solicited. Having only heard Regeneron's side of the story with the underlying record obscured, a few chose to submit briefs. Of the parties that gave Merus a chance to be heard, all but one declined to file an *amicus* brief. Even the *amici* that filed briefs did not endorse Regeneron's conduct. As one *amicus* noted, Regeneron failed to contest any of its misconduct and so, it must be assumed "that both Regeneron and its trial counsel engaged in egregious discovery abuses." Brief for Intellectual Property Law Association of Chicago as *Amicus Curiae* in Support of Rehearing *En Banc* at 4, *Regeneron Pharm., Inc. v. Merus N.V.*, 864 F.3d 1343 (Fed. Cir. 2017) (No. 16-1346).

conduct issue was that a ruling of inequitable conduct would further support—and may, in fact, independently merit—finding the case exceptional. *See, e.g.*, *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1380–81 (Fed. Cir. 1999) (vacating the district court's conclusion as to exceptional case and remanding for a determination of inequitable conduct regarding patents found not-infringed and invalid below); *see also* D.I. 248 at 2–3, 10–11 (citing additional authority). The Court agreed with Merus that "it makes the most sense to try the remaining portion of the case and have it all go up on appeal at once," and proceeded to trial. (D.I. 253.) Regeneron now attempts to turn the Court's order on its head, and use it as a shield against attorneys' fees, when the inequitable conduct claim is a separate basis supporting fees.

Subject to Merus' counterclaim, Regeneron had a duty to litigate in good faith and to comply with its discovery obligations, Court orders, and the Federal Rules of Civil Procedure, and to act with candor before the Court. Regeneron did not do so. To the contrary, Regeneron undisputedly acted unreasonably and vexatiously, made false assertions as to its alleged compliance with Court orders, submitted troubling declarations contradicted by withheld documents, and engaged in "a long pattern of litigation choices that have caused delay, inefficient use of resources, and diversion from the merits" every step of the way, including in its inequitable conduct defense. (D.I. 423 at 113; *see also* D.I. 426 at 6–17.) Unable to challenge the facts, Regeneron simply argues that because the misconduct happened while litigating a claim brought by Merus, Regeneron should not be held accountable. Of course, that is not the law. If it were, a plaintiff could never recover attorneys' fees because by definition, it pursues the claim at its own choosing. Regeneron's position contradicts § 285 and precedent. *See, e.g.*, *Taltech Ltd. v. Esquel Enters. Ltd.*, 604 F.3d 1324, 1329–34 (Fed. Cir. 2010) (affirming exceptional case due to patentee's abusive litigation tactics and inequitable conduct). Regeneron imposed the costs of its outrageous behavior on the Court and Merus from start to finish, and Merus should be made whole

4

and awarded fees for the same duration.

## IV. THE COURT'S ADVERSE INFERENCE DOES NOT IMMUNIZE REGENERON FROM SANCTIONS

Regeneron tries to chisel away at the total fee award, arguing that fees should not be awarded for its improper conduct at trial because that conduct was already sanctioned with an adverse inference under Fed. R. Civ. P. 37 because Regeneron waived privilege on the issue of specific intent but withheld as privileged documents that contradicted its witnesses' sworn testimony on that topic. Again, Regeneron misstates the facts and misapplies the law.

On the facts, as it did in its rejected appeal and petition for rehearing, Regeneron mischaracterizes the adverse inference. As the panel observed, "[t]he district court did **not** punish Regeneron's litigation misconduct by holding the patent unenforceable. Only after Merus proved the remaining elements of inequitable conduct did the district court hold the patent unenforceable." *Regeneron Pharm.*, 864 F.3d at 1364. Merus proved but-for materiality.[2] (D.I. 423 at 65–92.) Merus proved that Regeneron's agents knew of the references at issue, and made a decision to withhold them. (*Id.* at 86–87.) For the last element of inequitable conduct, the Court inferred that Regeneron's agents knew of the references' materiality only after Regeneron waived privilege on the issue of specific intent, but withheld documents "directly relevant to the topics as to which privilege has been waived." (*Id.* at 101–11.) The Court also found Regeneron committed affirmative egregious misconduct without the need of an adverse inference based on its agents' knowledge of the falsity of the sham presentation

---

[2] Regeneron points to the EP '287 patent and three newly-issued European patents to try to create issues where none exist. (D.I. 466 at 9.) But the Federal Circuit's affirmance of but-for materiality was irrespective of EP '287; the panel's ruling was based on the withheld references themselves. To the extent EP '287 is at all relevant, its claims had to be narrowed on appeal and it was held invalid in the U.K. for lack of enablement on a basis similar to the underpinning of the Court's independent affirmative egregious misconduct finding. Finally, the three European patents that have since issued all have different claims from the '018 patent and none were at issue in the instant case.

they gave the USPTO. (*Id.* at 90–92.)

On the law, a court examines the losing party's conduct "under the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756. The analysis **includes** consideration of conduct previously sanctioned, and "the fact that this misconduct has already been sanctioned should be weighed **more heavily**, rather than be excluded in the 35 U.S.C. § 285 analysis." *Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1339–40 (Fed. Cir. 2017) (finding error in excluding sanctioned conduct from the attorneys' fees award) (emphasis added); *see also Trs. of Boston Univ. v. Everlight Elecs. Co.*, No. 12-CV-11935-PBS, 2016 WL 3976603, at *3–4 (D. Mass. July 22, 2016) (awarding fees for conduct sanctioned with an adverse inference at trial); *Orbit Irrigation Prods., Inc. v. Sunhills Int'l, LLC*, No. 1:10-CV-113 TS, 2015 WL 7740405, at *3 (D. Utah Nov. 30, 2015) (awarding fees against a party sanctioned with a default judgment); *HipSaver Co. v. J.T. Posey Co.*, 497 F. Supp. 2d 96, 104 (D. Mass. 2007) (awarding fees against a litigant who "has twice already been sanctioned for failure to comply with discovery obligations"). Regeneron's sanctioned misconduct underscores why an award should include the fees from start to finish of a case Regeneron "should never have [] commenced." (D.I. 423 at 2.)[3] Indeed, as detailed in Merus' opening brief, it appears that Regeneron's strategy was to drive up costs and interfere with the legitimate business of a small company that could not match Regeneron's financial resources by, among other things, abusive use of privilege, routine obstruction of even the most basic discovery, and use of irrelevant third-party discovery calculated to do no more than interfere with Merus' business relationships. (D.I. 426 at 6–17.)

In section § 285, Congress authorized awards of attorneys' fees "to enable the court to prevent

---

[3] The cases cited by Regeneron do not counsel otherwise, but stand for the unremarkable proposition that when conducting the case-by-case *Octane Fitness* analysis, courts sometimes conclude that a case is not exceptional or a fees award is not warranted. None of the mitigating factors discussed in these cases apply to Regeneron's egregious misconduct.

6

a gross injustice to an alleged infringer." *Mathis v. Spears*, 857 F.2d 749, 758 (Fed. Cir. 1988) (citing S. Rep. No. 1503, 79th Cong., 2d Sess. (1946) *reprinted in* 1946 U.S. Code Cong. Serv. 1386-87); *Rohm & Haas Co. v. Crystal Chemical Co.*, 736 F.2d 688, 691 (Fed. Cir. 1984) (citing *Park-In Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951).) Regeneron subjected Merus to litigation misconduct throughout the case, which was "extraordinary by any standards." (D.I. 423 at 64.). Leaving Merus to bear the burden of its own counsel fees in fighting an adversary that simply refused to play by the rules would be grossly unjust.

## V. MERUS SHOULD BE AWARDED ATTORNEYS' FEES AND COSTS FOR THE ENTIRE CASE

In a tacit acknowledgement that a fees award is appropriate, Regeneron argues that Merus' recovery should not include appellate fees or expert fees. But again, rather than grappling with the severity of its misconduct, Regeneron misapplies the law.

### A. Merus should be awarded attorneys' fees, including for Regeneron's appeal

The Federal Circuit has made clear that "a case should be viewed more as an 'inclusive whole' rather than as a piecemeal process when analyzing fee-shifting under § 285." *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 516 (Fed. Cir. 2014). The trial court has discretion to "award[] fees for the entire case, including any subsequent appeals." *Inventor Holdings v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1380 (Fed. Cir. 2017). "[W]hile it is true that an award of appellate fees is not automatic . . . neither must the appeal be independently exceptional to justify such an award." *Action Star Enters. Co., v. KaiJet Tech. Int'l, Ltd.*, No. CV 12-08074 BRO (MRWx), 2015 WL 12752877, at *2–3 (C.D. Cal. June 24, 2015). "The question is not whether the appeal was an 'exceptional appeal,' but whether the entire litigation was an 'exceptional case' in terms of 35 U.S.C. § 285." *Del Mar Avionics, Inc. v. Quinton Instrument. Co.*, 897 F.2d 539 (Table), 1990 WL 12996 (Fed. Cir. Feb. 16, 1990).

7

Consistently, and contrary to Regeneron's suggestion, the Federal Circuit has affirmed a fee award, including appellate fees, where "there were obvious issues" with the patent that "persisted throughout the . . . appeal." *Inventor Holdings*, 876 F.3d at 1380; *see also Checkpoint Sys., Inc. v. All-Tag Security S.A.,* No. 01–2223, 2015 WL 4941793, at *5 (E.D. Pa. Aug. 19, 2015) *rev'd on other grounds*, 858 F.3d 1371 (Fed. Cir. 2017) (holding the "appeal was not itself exceptional under Section 285, but this does not preclude an award of attorneys' fees," and exercising discretion "in awarding appellate fees" to compensate the defendants). The Federal Circuit acknowledged that having ""live[d] with the case over a prolonged period of time," the district court is "in the best position to award fees as an initial matter for the entire case, including the . . . appeal." *Inventor Holdings*, 876 F.3d at 1380.

To the extent the strength of Regeneron's appeal is at all pertinent, it also favors awarding appellate fees. Regeneron forced Merus to seal much of the record, obscuring it from the public and the *amici* it solicited and then **never contested its privilege waiver or any of its misconduct**. Regeneron virtually entirely scuttled the claim construction, non-infringement, and invalidity issues raised in its opening brief, but only after it forced Merus to address them in opposition. Instead, it focused on a *sui generis* argument that Federal Rule 37 could never result in the an adverse inference regarding an element of inequitable conduct—an argument unsupported by precedent and rejected by the panel and ten of twelve Federal Circuit judges who denied Regeneron's *en banc* petition.

This Court has lived with Regeneron's "long pattern of litigation choices that have caused delay, inefficient use of resources, and diversion from the merits." (D.I. 423 at 113.) Having deemed this case "extraordinary," the Court has the authority to fully compensate Merus through the appeal for being forced to endure Regeneron's "[t]roubling litigation tactics" throughout. (D.I. 423 at 2.)

### B. Merus should be awarded its expert fees and costs

Regeneron's undisputed egregious misconduct and its abuse of the judicial process justify use

8

of the Court's inherent powers to award Merus' expert fees and costs. Such an award is not limited to a party that retains too many or unqualified experts, as Regeneron argues. A district court has inherent authority "to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute" in cases where it makes a "finding of fraud or abuse of the judicial process." *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008) (internal quotation marks omitted); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.,* 23 F.3d 374, 378 (Fed. Cir. 1994) ("The Supreme Court has permitted a federal court to invoke its inherent powers if… 'fraud has been practiced upon it, or that the very temple of justice has been defiled.'"). Litigation abuses similar to and less egregious than what occurred here have led courts to award expert fees. *See, e.g., Mathis v. Spears*, 857 F.2d 749, 759 (Fed. Cir. 1988) (affirming award of reasonable expert fees in an inequitable conduct case where the patentee withheld invalidating sales documents and engaged in a misleading simulation of a prior art device at trial.); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, No. 95 CIV. 8833 RPP, 2002 WL 1733681, at *14 (S.D.N.Y. July 26, 2002) (finding that obstructing conduct during depositions, wasteful expert discovery, improper claims of privilege "defiled the 'temple of justice,'" warranting expert fees); *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921–22 (Fed. Cir. 2012) (affirming an award of attorneys' fees and expert fees where the patentee's "vexatious conduct and bad faith increased the cost of litigation in ways that are not compensated under § 285"); *Qualcomm Inc. v. Broadcom Corp.*, No. 05cv1958-B (BLM), 2007 WL 9677112, at *7–8 (S.D. Cal. Oct. 29, 2007) (awarding expert fees due to: (i) "constant stonewalling, concealment, and repeated misrepresentations concerning existing corporate documentary evidence"; (ii) trial "presentation of numerous witnesses who steadfastly testified falsely"; and (iii) actions of counsel who "adamantly denied the obvious and then, when the truth was discovered and exposed" and "contended denial of relevance, justification, mistake, and finally non-awareness").

Here, Regeneron's serial denial of appropriate discovery, abusive use of privilege, misrepresentation of facts to the Court, submission of declarations contradicted by withheld evidence, and attempt to enforce a patent procured through fraud were an abuse of the judicial process. Those acts increased litigation costs beyond the fees compensable under § 285 and its conduct requires a commensurate response. Indeed, Regeneron has already told its shareholders that, while it may have to pay attorneys' fees, such an award "is not expected to have a material impact…" Regeneron Pharmaceuticals Inc., Annual Report (Form 10-K) at 42 (Feb. 28, 2018), *available at* http://investor.regeneron.com/secfiling.cfm?filingID=1532176-18-13. And that may be precisely the point. Having far superior resources, Regeneron has acted with recalcitrance and a disregard for the basic rules of fair play. Awarding expert fees is a proper result based on that conduct.[4] Merus' expert use was reasonable and caused by Regeneron's egregious misconduct. As such, the Court should exercise its inherent authority to award Merus its expert fees.

## VI.   CONCLUSION

Because Regeneron engaged in pervasive misconduct that was "extraordinary by any standards" throughout the litigation, the Court should find this case exceptional within the meaning of 35 U.S.C. § 285 and should award Merus its attorneys' fees and costs for the entire case. The Court should further exercise its inherent discretion and reimburse Merus for its expert fees necessitated by Regeneron's misconduct.

---

[4] That is particularly so because had Regeneron produced the Court-ordered discovery showing that its inventor and prosecuting attorney were aware that the '018 specification examples were inoperative and its agents' understanding of the material references withheld, inequitable conduct may have been resolved based on the documents and witness testimony alone. Likewise, Regeneron and its expert took "vastly different positions" on issues such as claim construction. (D.I. 423 at 55). In turn, Merus' expert had to provide additional analysis and opinions addressing Regeneron's ever-shifting position, further driving up litigation and expert costs.

Dated: New York, New York  
       March 12, 2018

Kirkland & Ellis LLP

*/s/ Patricia A. Carson*
_____
Patricia A. Carson  
Aaron Resetarits  
KIRKLAND & ELLIS LLP  
601 Lexington Avenue  
New York, New York 10022  
Telephone: (212) 446-4800  
Facsimile: (212) 446-4900

*Attorneys for Merus N.V.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that **MERUS' REPLY BRIEF IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES, EXPERT FEES AND COSTS** was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of said filing to all counsel of record.

Dated: New York, New York
March 12, 2018                                          *Patrice Boucaud*
                                                         Patrice Boucaud