# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

Regeneron Pharmaceuticals, Inc.,

        Plaintiff/Counterclaim
        Defendant

    vs.

Merus N.V.,

        Defendant/Counterclaim
        Plaintiff

Civil Action No. 14-CV-1650 (KBF)

**Public Version**

## MERUS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION AND DOCUMENTATION FOR ATTORNEYS' FEES, EXPERT FEES, EXPENSES, AND COSTS

## TABLE OF CONTENTS

I.      INTRODUCTION...................................................................................................... 1

II.     MERUS' SUPPORTING DOCUMENTATION SHOWS ITS FEES, COSTS,
        AND EXPENSES REQUESTED ARE REASONABLE ............................................. 3

        A.      Merus' Request for Attorneys' Fees is Reasonable ................................. 4

        B.      Merus' Request for Expert Fees is Reasonable ..................................... 10

        C.      Merus' Request for Expenses and Costs is Reasonable......................... 11

        D.      Merus' Continuing Fees, Costs, and Expenses ...................................... 12

III.    THE COURT SHOULD AWARD INTEREST .......................................................... 12

        A.      The Court Should Award Merus Prejudgment Interest ......................... 12

        B.      The Court Should Award Merus Post-Judgment Interest..................... 14

IV.     CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
607 F.3d 817 (Fed. Cir. 2010)..........................................................................12, 14

*Anderson v. YARP Rest., Inc.*,
No. 94-CV-7543, 1997 WL 47785 (S.D.N.Y. Feb. 6, 1997)....................................9

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*,
522 F.3d 182 (2d Cir. 2008).....................................................................................9

*Beastie Boys v. Monster Energy Co.*,
112 F. Supp. 3d 31 (S.D.N.Y. 2015).........................................................................6

*Blanchard v. Bergeron*,
489 U.S. 87 (1989)....................................................................................................4

*Blissett v. Casey*,
No. 83-CV-218, 1999 WL 1034502 (N.D.N.Y. Oct. 28, 1999) .............................12

*Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc.*,
No. 14-CV-6911, 2016 WL 658310 (S.D.N.Y. Feb. 17, 2016).............................13

*Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.*,
723 F.2d 1573 (Fed. Cir. 1983)..............................................................................11

*City of Burlington v. Dague*,
505 U.S. 557 (1992)..................................................................................................4

*Deere & Co. v. Duroc LLC*,
650 F. App'x 779 (Fed. Cir. 2016) .........................................................................11

*Genger v. Genger*,
No. 14-CV-5683, 2015 WL 1011718 (S.D.N.Y. Mar. 9, 2015).............................9

*Gilead Scis., Inc. v. Merck & Co.*,
No. 13-CV-04057, 2017 WL 3007071 (N.D. Cal. July 14, 2017).....................7, 10

*Gust, Inc. v. Alphacap Ventures, LLC*,
No. 15-CV-6192, 2017 WL 2875642 (S.D.N.Y. July 6, 2017) ...................12, 13, 14

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..................................................................................................4

*Junker v. Eddings*,
    396 F.3d 1359 (Fed. Cir. 2005)............................................................................9

*Kaufman Co. v. Lantech, Inc.*,
    926 F.2d 1136 (Fed. Cir. 1991)..........................................................................13

*Kilopass Tech., Inc. v. Sidense Corp.*,
    82 F. Supp. 3d 1154 (N.D. Cal. 2015) ...............................................................10

*Lucent Techs., Inc. v. Tatung Co.*,
    269 F. Supp. 2d 402 (S.D.N.Y. 2003).................................................................13

*MarcTec, LLC v. Johnson & Johnson*,
    664 F.3d 907 (Fed. Cir. 2012).........................................................................3, 10

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988)..................................................................... *passim*

*MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*,
    16-CV-8103, 2017 WL 1194372 (S.D.N.Y. Mar. 30, 2017)...................................8

*Regeneron Pharms., Inc. v. Merus N.V.*,
    864 F.3d 1343 (Fed. Cir. 2017)...........................................................................6

*Schipani v. McLeod*,
    541 F.3d 158 (2d Cir. 2008)...............................................................................14

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
    549 F.3d 1381 (Fed. Cir. 2008)........................................................................7, 10

*Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*,
    No. 90-CV-5593, 1997 WL 177886 (S.D.N.Y. Apr. 14, 1997) ...........................13

*Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*,
    No. 12-CV-1285 2016 WL 3436396 (D. Del. June 15, 2016)..............................11

*W. Virginia v. United States*,
    479 U.S. 305 (1987)..........................................................................................14

**Statutes**

28 U.S.C. § 1914....................................................................................................14

28 U.S.C. § 1920....................................................................................................11

28 U.S.C. § 1961....................................................................................................14

35 U.S.C. § 285.............................................................................................. *passim*

New York Civil Practice Law § 5004 ............................................................................13

**Rules**

Federal Rule of Civil Procedure 26 ...............................................................................1

Federal Rule of Civil Procedure 37 ...............................................................................2

Federal Rule of Civil Procedure 54 .............................................................................11

## I.    INTRODUCTION

Pursuant to this Court's Opinion and Order granting Merus' motion for attorneys' fees, expert fees, costs, and expenses, D.I. 468 at 35, Merus respectfully files its detailed explanation of attorneys' fees, expert fees, costs, and expenses incurred in defending against Regeneron's litigation.

The factual background of this case and procedural posture are set forth in the Court's Opinion and Order, and will only be revisited as needed to show the reasonableness of the fees, cost, and expenses Merus incurred. *Id*. at 1-28. Briefly, as the Court itself noted, this patent infringement litigation, "should never have commenced," and involved multiple years of abusive tactics that Merus had to endure. *Id*. 468 at 2-3. At the outset, without an apparent pre-suit investigation, Regeneron filed its complaint half-cocked with no act of infringement to speak of. It then immediately demanded broad discovery untethered to its patent claims, prior to a Rule 26(f) conference or entry of a protective order, in contravention of the Federal Rule of Civil Procedure 26(d). *See* Fed. R. Civ. P. 26(d)(1); D.I. 425, Ex. 1.

Regeneron continued its abusive discovery campaign by serving subpoenas on five of Merus' investors and one party having no relationship with Merus. D.I. 44 at 1-2. These subpoenas served nothing more than to interfere with Merus' legitimate business, as evidenced by Regeneron's subsequent nonuse of the information it obtained from those parties. And while Regeneron demanded broad and premature discovery from Merus and its investors, Regeneron obstructed the discovery Merus sought at virtually every stage, forcing Merus to file (and win) serial motions to compel Regeneron's compliance with Court orders, the rules of discovery, and

this District's local rules. *See, e.g.*, D.I. 75, 76, 81, 82, 83 199, 203, 256.[1] Regeneron also forced Merus to send serial discovery letters and file motions to compel (*e.g.*, D.I. 199), only to pull the rug out from Merus after those filings, by purporting to agree to the very issues it had previously stonewalled. *See, e.g.*, D.I. 65, 68, 201.

These abuses continued throughout the inequitable conduct phase of the case, driving up costs along the way. On the eve of the deposition of Regeneron's outside prosecution counsel, Regeneron waived privilege, but it refused to produce all waived documents on the same subject matter as required by controlling law, forcing Merus to cancel the deposition. D.I. 203 at 1. Regeneron then refused to comply with the Court's waiver ruling, requiring Merus to come back to the Court for relief. *E.g.*, D.I. 256. Regeneron then expansively waived privilege a second time on the eve of trial, forcing Merus to file multiple emergency motions, and scour privilege logs and documents in parallel to putting on its inequitable conduct case. *E.g.*, D.I. 353, 359.

Even with respect to Regeneron's view of its own patent, its shifting-sands approach to claim interpretation significantly increased the costs of the case. *Compare* Res. Decl., Ex. 1,[2] July 24, 2014 Hr'g Tr. at 7:13-19, 8:4-10, 14:14-15:4, 16:19-24 (Regeneron's counsel stating, all the claims are "a single limitation," noting "we have gone in a different direction") *with* D.I. 423 at 57 n.31 (noting Regeneron's inequitable conduct expert added limitations into the claim and changing positions multiple times); *see also* D.I. 468 at 35.

In short, Regeneron's abusive and obstructionist approach to this case drove-up Merus'

---

[1] Merus' success on its motions to compel provides an independent basis for fees pursuant to Federal Rule of Civil Procedure 37(a)(5)(A).

[2] Numerical Exhibits 1 to 10 are attached to the Declaration of Aaron D. Resetarits, Esq. ("Res. Decl.") filed contemporaneously herewith. Additional exhibits and supporting documentation are attached to the Declaration of Patricia A. Carson, Esq. ("Carson Decl.") filed contemporaneously herewith.

attorney's fees, expert fees, cost, and expenses. Regeneron cannot now complain of reimbursing the reasonable fees and costs incurred by Merus in having to deal with those tactics.

Further, despite all this, Merus' outside counsel took a lean and parsimonious approach to staffing and billing. Whereas Regeneron's counsel attended hearings and depositions packed with attorneys and support staff, Merus, a small company of limited resources, regularly sent far fewer.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ *id.* at Ex. 7, Sept. 12, 2014 Hr'g (three Merus attorneys, six Regeneron); *id.* at Ex. 8, May 5, 2014 Hr'g (two Merus attorneys appearing, four Regeneron attorneys appearing); *id.* at Ex. 1, July 24, 2014 Hr'g (three Merus attorneys appearing, four Regeneron attorneys appearing).

Against this backdrop, Merus now provides full documentation supporting its reasonable fees, costs, and expenses that it incurred. The Declaration of Patricia A. Carson and the exhibits filed thereto further demonstrate the reasonableness of the fees and provide detailed documentation for Merus' request. In addition, Merus seeks appropriate interest on the foregoing fees and costs. Finally, Merus reserves the right to supplement the foregoing calculations for additional fees and costs it may incur for any future action or briefing related to this case.

## II. MERUS' SUPPORTING DOCUMENTATION SHOWS ITS FEES, COSTS, AND EXPENSES REQUESTED ARE REASONABLE

This Court's Order granting Merus' motion for fees under 35 U.S.C. § 285 and the Court's inherent authority states that Merus is entitled to its (1) attorneys' fees, (2) expert fees, (3) costs and expenses. D.I. 468 at 31, 35 (citing *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012)). Each category will be addressed separately below, along with Merus'

reservation of rights to file and recoup any continuing expenses associated with this litigation.

## A. Merus' Request for Attorneys' Fees is Reasonable

In determining "reasonableness," courts start with the "lodestar" method, multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See City of Burlington v. Dague*, 505 U.S. 557, 559 (1992); *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). Merus request attorneys' fees in the amount of $7,905,124.78 under the lodestar method based on the reasonable time billed and charged at the reasonable hourly rates of Kirkland's attorneys, paralegals, and support staff. Carson Decl. ¶¶ 3-6, Ex. A at Tabs 1A & 1B, Exs. B.1-B.6.

There is a "strong presumption" that the lodestar is reasonable, *Burlington*, 505 U.S. at 562, but the district court may then "adjust [the] lodestar calculation by other factors." *Blanchard*, 489 U.S. at 94. Specifically, the following factors are consulted when determining the reasonableness of a fee award:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 429-30 n.3 (1983); *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988). Here, the *Hensley* factors confirm the reasonableness of Merus' requested fees.

Addressing factors one through three, patent cases, particularly ones involving complex technology such as this case, generally require significant time and labor. But, as the Court observed and as set out above, here, that work was greatly exacerbated by Regeneron's blatant, repeated acts of misconduct, which significantly increased the workload required to litigate, amplified the complexity of the case, and required a high level of skill to navigate Regeneron's

tactics. Indeed, Regeneron alone is to blame for driving up the cost of this case. The saga of events, from Regeneron's discovery abuses, privilege abuses, violations of the Federal and Local rules, Regeneron's unfocused and baseless infringement contentions, subpoenaing of investors, trial waivers, and vacillating expert positions, all support the reasonableness of the time and resources Merus spent to defend and pursue its counterclaims in this case. Unfortunately, all of this diverted critical company attention and money from Merus' efforts to develop potentially life-saving drugs for cancer patients. *See* D.I. 426 at 2-3. Numerous pleadings and Court orders describe Regeneron's vexing conduct in detail, *see, e.g.*, D.I. 426 at 3-18; D.I. 468 at 1-28, which justify the reasonableness of the hours Merus and its counsel spent in defending against Regeneron's suit. Indeed, Regeneron's conduct required Merus to bring to bear its legal expertise to tackle issues outside the purview of a typical patent case.

Addressing factor nine, the experience, reputation, and ability of the attorneys, Merus prevailed, in no small part due to the experience and skill of its attorneys and other members of the litigation team, which included lead partners with significant industry accolades, having science degrees, including one with a Ph.D. Carson Decl. ¶¶ 17-20, Ex. CC. Merus also staffed scientific advisors with advanced degrees and/or specialized training in science, and others with expertise in discovery disputes and e-Discovery as needed due to Regeneron's tactics. *Id*. at ¶ 18, 20. Because Regeneron used this suit in an attempt to pose an existential threat to Merus—a small entity at the time—Merus was forced to staff this case accordingly. Nonetheless, in comparison to Regeneron's use of resources, it cannot be doubted that Merus' outside counsel, Kirkland & Ellis LLP ("Kirkland"), staffed this case leanly. As noted above, Merus' attorneys were repeatedly outnumbered at depositions and hearings, where Regeneron would bring double and even quadruple the number of attorneys. *See supra* at 3. Regeneron's staffing and scorched earth

approach to the case underscores the reasonableness of Merus' attorney fees for the use of the counsel of its choosing.[3]

Addressing factors seven and eight, the time limitations imposed by the client or the circumstances and the amount involved and the results obtained, also heavily weigh in favor of the reasonableness of the fees. Because this case cast a pall over Merus' business, time was of the essence in litigating it to its conclusion. Numerous pleadings show Merus' efforts to timely advance the case, while Regeneron repeatedly sought to stall the proceedings. *See, e.g.*, D.I. 199 at 1-2; D.I. 248. The pace at which Merus pursued its counterclaim, and adherence to the Court's schedule likely saved significant resources that otherwise could have been lost by Regeneron's attempts at delay. The results obtained further confirm the reasonableness of the award, as Merus' pursuit of its inequitable conduct claim unearthed clear affirmative egregious misconduct before the USPTO, the withholding of four but-for material references by Regeneron's prosecution counsel, and significant litigation misconduct designed to obscure its prosecution misconduct, which was found by this Court and affirmed by the Federal Circuit. *Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1364 (Fed. Cir. 2017).

Factors five and twelve, the customary fee for such a case and awards in similar cases, further supports the reasonableness of Merus' attorneys' fees. Merus' request for attorneys' fees is in-line with quantitative data assembled by AIPLA regarding the average litigation for patent

---

[3] The Court should reject any argument by Regeneron that the amount or detail in Merus' bills warrants a reduction in the award. While Merus expects Regeneron may attempt to cherry-pick or criticize particular entries from Merus' bills, that would not justify a reduction of the award. *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 54 (S.D.N.Y. 2015) (bills "contained enough detail and specificity so as to afford reasonable confidence that the time billed was productively spent"). To the extent Regeneron is inclined to complain regarding those entries, then it should turn over its litigation counsel's bills from the relevant time period for the Court's inspection.

lawsuits of this magnitude during the relevant time period. Carson Decl. ¶¶ 22-24, Exs. X-AA. Courts in patent cases have likewise awarded fees, costs, and expenses above what Merus is requesting here. *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381 (Fed. Cir. 2008) (affirmed award of $16,800,000 in fees, expenses, and expert fees, plus interest in a patent case that involved litigation misconduct); *Gilead Scis., Inc. v. Merck & Co.*, No. 13-CV-04057, 2017 WL 3007071 (N.D. Cal. July 14, 2017) (awarded $12,591,636 in fees in a two patent cases that involved litigation misconduct).

Assessing the reasonableness of the attorneys' fees hourly rates, leads to the same conclusion. Courts have relied upon the bi-annual *Report of the Economic Survey* prepared by the American Intellectual Property Law Association ("AIPLA Survey") in assessing this factor. *See, e.g., Mathis*, 857 F.2d at 756 ("As the law makes clear, the district court properly considered the [AIPLA] surveys."). In addition to the AIPLA surveys, the *Valeo 2018 Intellectual Property Litigation Report* ("Valeo Report") catalogs hourly billing rates for Kirkland and similarly positioned law firms, as well as information about billing rates in intellectual property litigation generally. Carson Decl. ¶¶ 22-24, Exs. X-AA. Those reports confirm the reasonableness of Merus' attorneys' fees:

- Data from the Valeo Report, which identifies billing rates for intellectual property litigation attorneys (per hour) for the AmLaw top 50 firms (Carson Decl., Ex. AA at 40):

|  | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|
| Senior Partner | $857 | $886 | $994 | $1,120 |
| Partner | $761 | $822 | $925 | $960 |
| Counsel | $755 | $761 | $772 | $874 |
| Senior Associate | $563 | $574 | $660 | $704 |

| | | | | |
|---|---|---|---|---|
| Associate | $466 | $483 | $542 | $618 |
| Supporting Staff | $308 | $322 | $332 | $348 |

- AIPLA Surveys from 2013, 2015, and 2017, showing relevant billing rates for IP Attorneys in New York from the prior year (*i.e.* 2012, 2014, 2016):

  o AIPLA Survey 2013 (Carson Decl., Ex. X at I-34, I-48):

| | Mean | Median | Third Quartile (75%) | 90th Percentile |
|---|---|---|---|---|
| Partner | $563 | $450 | $725 | Not reported |
| Associate | $442 | $407 | $568 | Not reported |

  o AIPLA Survey 2015 (Carson Decl., Ex. Y at I-25, I-36):

| | Mean | Median | Third Quartile (75%) | 90th Percentile |
|---|---|---|---|---|
| Partner | $530 | $400 | $634 | $995 |
| Associate | $481 | $443 | $636 | $690 |

  o AIPLA Survey 2017 (Carson Decl., Ex. Z at I-27, I-39.)

| | Mean | Median | Third Quartile (75%) | 90th Percentile |
|---|---|---|---|---|
| Partner | $582 | $540 | $705 | $930 |
| Associate | $461 | $413 | $610 | $775 |

███████████████████████████████████████████████████████

████████████████████████████████████████████████ These rates are in-

line with the evidence above and also reasonableness findings by courts in this District. *See, e.g.,*

*MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, 16-CV-8103, 2017 WL

1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (finding that associate billing rates of $569-$753 per

hour and partner billing rates of $874-$1,048 are "reasonable" rates for a commercial litigation that was "not particularly complex"). Merus also seeks to recover the reasonable rates of its paralegals and support staff as part of its fee award. *Mathis*, 857 F.2d at 760-61. ████████████████████ ███████████████████████████████████████████████ which are in-line with the Valeo Report, and reasonableness findings by courts in this District. *Genger v. Genger*, No. 14-CV-5683, 2015 WL 1011718, at *3 (S.D.N.Y. Mar. 9, 2015) (approved $260–$280 per hour for paralegals for a case that lasted from 2014-2015). The rates charged by support staff is generally less than paralegals.

The fact that the fees and rates reflected in the documentation were actually negotiated and billed to Merus is also strong evidence of their reasonableness. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008) ("The reasonable hourly rate is the rate a paying client would be willing to pay."); *Anderson v. YARP Rest., Inc.*, No. 94-CV-7543, 1997 WL 47785, at *2 (S.D.N.Y. Feb. 6, 1997) ("The best evidence of a reasonable fee rate is the amount actually charged by counsel[.]") █

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Merus is not seeking to recover the significant amount of fees that were written-off or not billed during the litigation, Carson Decl. ¶ 7, Ex. A at Tab 5, Exs. W.1-W.4, although it is fully within the Court's discretion to award the full amount of fees that would have been incurred in the absence of these write-offs ███████████████ provided as an accommodation to a fledgling company haled into court on a case that should never have been filed. *See Junker v. Eddings*, 396 F.3d 1359, 1365 (Fed. Cir. 2005) ("Although the amount the client paid the attorney

is one factor for the court to consider in determining a reasonable fee, it does not establish an absolute ceiling."). These write-offs further evidence the reasonableness of the fees Merus is seeking to recover.

Factors four and six—the preclusion of employment by the attorney due to acceptance of the case and whether the fee is fixed or contingent—also confirms the reasonableness of these fees.



*See Gilead*, 2017 WL 3007071, at *9 ("the Court is not persuaded that the fixed fee agreement should act as an automatic ceiling on the reasonable rate"); *see also Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1167-69 (N.D. Cal. 2015) (structure of alternative fee agreement "may be relied upon in determining the 'reasonable' rate").

*Id.* Even though Regeneron played no role in negotiating ▮▮▮▮▮▮▮▮ Regeneron stands now to benefit from them.

Merus' attorneys' fees are reasonable, and it respectfully requests reimbursement in full.

**B.    Merus' Request for Expert Fees is Reasonable**

Merus' expenditure of $465,390.34 in expert fees in this case was also reasonable, particularly because of Regeneron's shifting claim construction positions and misconduct during the litigation. *See, e.g.*, *MarcTec*, 664 F.3d at 921-22 (affirming award of over $800,000 in expert fees based on the "unreliable and irrelevant expert testimony" of the other side, and to compensate for "vexatious conduct and bad faith" litigation); *Takeda*, 549 F.3d at 1391 (affirming award of over $1 million in expert fees in case involving litigation misconduct).

Merus has provided invoices for the following experts: Dr. Raphael Clynes, a technical expert who provided testimony during claim construction; Dr. Geoffrey Davis, an immunological expert who opined on the materiality of Regeneron's withheld references, technical inaccuracies of Regeneron's presentation submitted to the USPTO, and technical failures of the disclosures of the patent-in-suit; Mr. John Doll, a USPTO expert who provided opinions about USPTO procedures; Dr. Joan Ellis a USPTO expert with whom Merus consulted; Dr. Randal J. Kaufman a technical expert with whom Merus consulted; and Judges Paul R. Michel and Randall R. Rader with whom Merus consulted during the appeal. Carson Decl. ¶¶ 3, 10-16, Ex. A at Tab 4, Exs. P-V. Merus respectfully requests reimbursement of these reasonable expert fees.

## C.    Merus' Request for Expenses and Costs is Reasonable

An award of fees under § 285 should include reasonable expenses and costs incurred in providing legal services related to the suit. *See Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983); *Mathis*, 857 F.2d at 754, 757-61 (affirming § 285 permits reimbursement of legitimate expenses defendant was unfairly forced to pay, including "lodging expenses" and "overhead expenses," and ruling that the limitations on costs imposed under Fed. R. Civ. P. 54(b) and 28 U.S.C. § 1920 did not apply). These costs here include reasonable out-of-pocket expenses incurred by attorneys and normally charged to their clients, including expenses for travel, meals, lodging, photocopying, computer legal research, postage, facsimiles, trial graphics, e-Discovery costs, courier services, and other related services. *See id.*; *see Deere & Co. v. Duroc LLC,* 650 F. App'x 779, 782 (Fed. Cir. 2016) (affirming award of certain e-Discovery costs); *see also Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*, No. 12-CV-1285 2016 WL 3436396, at *5 (D. Del. June 15, 2016) (awarding under § 285 expenses "related to travel, food, lodging, telephone, mail, photocopying, facsimile, courier, filing fees, deposition transcripts, subpoena services, and other related services.") Recoverable costs and expenses in

this case amount to $1,793,366.44 as shown in the accompanying documentation. *See* Carson Decl. at ¶¶ 3, 8-9, Ex. A at Tabs 3A & 3B, Exs. C.1-C.5, D-O. Merus respectfully requests reimbursement of these reasonable costs and expenses.

### D.    Merus' Continuing Fees, Costs, and Expenses

As noted above, Merus reserves its right to supplement the foregoing calculations for additional fees and costs it may incur in connection with any further actions related to this case, including Merus' reply to any opposition that Regeneron files with respect to fees and defending any appeal of this Court's fee calculation. *Blissett v. Casey*, No. 83-CV-218, 1999 WL 1034502, at *3-4 (N.D.N.Y. Oct. 28, 1999) (awarding fees incurred in defending appeal and opposing *cert* petition, both arising from fee award itself).

## III.    THE COURT SHOULD AWARD INTEREST[4]

### A.    The Court Should Award Merus Prejudgment Interest

The Court has authority and sound discretion, in cases of "bad faith or other exceptional circumstances," to grant prejudgment interest. *Mathis*, 857 F.2d at 760-61; *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010) (affirmed § 285 fee award, which included prejudgment interest, where litigation misconduct was found); Res. Decl., Ex. 9, (Final Amended Judgment from *Advanced Magnetic*); *Gust, Inc. v. Alphacap Ventures, LLC*, No. 15-CV-6192, 2017 WL 2875642, at *7 (S.D.N.Y. July 6, 2017) ("[T]he Federal Circuit has held that prejudgment interest may be awarded under Section 285.").

Given the egregiousness of Regeneron's litigation misconduct throughout this case and commission of inequitable conduct, *see e.g.*, D.I. 468 at 31-32, the Court should exercise its

---

[4] Because the total interest accrued will depend on the size of the award, the Court should defer calculating that amount until it enters Final Judgment. Merus will provide the Court with a supplemental submission calculating the amount of interest prior to that time.

discretion and grant prejudgment interest on the fee award at a rate of 9% compounded annually. *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1144 (Fed. Cir. 1991) ("The ascertainment of the prejudgment interest rate is within the sound discretion of the district court.").  The 9% rate is the prejudgment interest rate established under § 5004 of the New York Civil Practice Law and Rules and is a rate frequently awarded by courts in this District, including awards pursuant to § 285. *Gust*, 2017 WL 2875642, at *7 (awarding prejudgment interest at the New York statutory interest rate of 9% on attorney fee award under Section 285); *Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, No. 90-CV-5593, 1997 WL 177886, at *2 n.1 (S.D.N.Y. Apr. 14, 1997) (awarding prejudgment interest at a rate of 9% compounded annually in a patent case); *Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc.,* No. 14-CV-6911, 2016 WL 658310, at *12 (S.D.N.Y. Feb. 17, 2016) (awarding prejudgment interest at the New York statutory interest rate of 9%) (collecting cases); *Lucent Techs., Inc. v. Tatung Co.*, 269 F. Supp. 2d 402, 408 (S.D.N.Y. 2003) (entering judgment of prejudgment interest at a rate of 9%).

The requested interest rate is appropriate in this case to both compensate Merus for its losses and to deter future wrongful conduct by litigants before this Court.[5]  Indeed, as Regeneron has already told the public, while it recognized the potential for it to pay attorneys' fees, it has stated such an award "is not expected to have a material impact" on Regeneron or its shareholders. Res. Decl., Ex. 10 (Regeneron Pharmaceuticals Inc., Annual Report (Form 10-K) at 42 (Feb. 8, 2018)).  Yet, there can be no doubt that Regeneron's suit against Merus and the cost it imposed caused a significant disruption to Merus' business.  An award of an appropriate level of interest alleviates at least some of the financial burden to Merus' business caused by the suit.

---

[5] Alternatively, if the Court is not inclined to award Merus prejudgment interest at a rate of 9%, Merus request that the Court award it prejudgment interest at the same interest rate as post-judgment interest.  *Infra* § III.B.

Prejudgment interest should also accrue from the date fees, costs, and expenses were invoiced by Merus' attorneys, experts, and vendors. *See Gust*, 2017 WL 2875642, at *7. Because Merus lost the use of that money—which it could have earmarked for important business purposes such as research and development—it was injured each and every time it received and paid invoices associated with this litigation. Merus should be made whole for that loss. *W. Virginia v. United States,* 479 U.S. 305, 310 n.2 (1987) ("prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues.") This Court recognized "once this litigation had commenced, Merus was under the taint of a patent infringement claim." D.I. 468 at 34. And, since this case has been deemed "exceptional" from the filing of the Complaint through its conclusion, prejudgment interest should be calculated from the date each invoice was incurred during the pendency of this litigation.

## B.     The Court Should Award Merus Post-Judgment Interest

A money award entitles Merus to post-judgment interest as of the date judgment is entered. 28 U.S.C. § 1961; *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) ("Because we have consistently held that an award of postjudgment interest is mandatory, the district court erred in not including interest at the statutory rate") (citations omitted); *Advanced Magnetic*, 607 F.3d at 833 (affirmed § 285 fee award, which included post-judgment interest, where litigation misconduct was found); Res. Decl., Ex. 9, (Final Amended Judgment from *Advanced Magnetic*). Pursuant to 28 U.S.C. § 1961 and this District's fee schedule issued in accordance with 28 U.S.C. § 1914(b), "[t]he post-judgment interest rate is the weekly average one-year constant maturity Treasury yield for the calendar week preceding the date of entry of the judgment [and] the rate of interest that may be added to a judgment … shall be equal to the weekly average 1-year constant maturity Treasury yield." S.D.N.Y. District Court Fee Schedule and Related Information (*available at*

http://www.nysd.uscourts.gov/fees?judgment) (last visited: Apr. 19, 2018). The Court should award post-judgment interest calculated in accordance with the foregoing.

## IV.      CONCLUSION

For the foregoing reasons, Merus requests that the Court grant its request for reasonable attorneys' fees, expert fees, costs, and expenses, in the amount of $7,905,124.78 in attorneys' fees, $465,390.34 in expert fees, and $1,793,366.44 in litigation expenses and costs, along with appropriate interest. Carson Decl. ¶ 3.

Dated: April 20, 2018

Respectfully submitted,

Patricia A. Carson
Aaron D. Resetarits
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-6443
Facsimile: (212) 446-6460
patricia.carson@kirkland.com
aaron.resetarits@kirkland.com

*Attorneys for Merus N.V.*