UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Regeneron Pharmaceuticals, Inc.,<br><br>        Plaintiff/Counterclaim Defendant<br><br>vs.<br><br>Merus N.V.,<br><br>        Defendant/Counterclaim Plaintiff | Civil Action No. 14-CV-1650 (KBF)<br><br>**Public Version** |

**DECLARATION OF PATRICIA A. CARSON, ESQ. IN SUPPORT OF
MERUS' MOTION AND DOCUMENTATION FOR
ATTORNEYS' FEES, EXPERT FEES, EXPENSES, AND COSTS**

I, Patricia A. Carson, declare and state as follows:

1.  I am an attorney licensed to practice before the courts of the State of New York and the State of New Jersey. I am a partner with the law firm Kirkland & Ellis LLP ("Kirkland"), counsel of record for Merus N.V. ("Merus" or "Defendant"). I am admitted to practice before this Court. I have personal knowledge of the following facts, and if called and sworn as a witness, could and would competently testify thereto.

2.  Kirkland has been U.S. counsel in the above-identified litigation for the entire duration of the case. Kirkland has handled all stages and aspects of this litigation, including a successful appeal at the United States Court of Appeals for the Federal Circuit. The Federal Circuit also denied rehearing and rehearing *en banc* of the case on its merits.

3.  By its motion, Defendant requests an award from this Court of $7,905,124.78 in attorneys' fees, $465,390.34 in expert fees, and $1,793,366.44 in litigation expenses and costs, as detailed herein, all of which Defendant incurred in its defense in this case.

4. Attached as Exhibits B.1-B.7[1] is a compilation of true and correct copies of Kirkland's billing statements, reflecting fees incurred in this action between April 2014 (the outset of the case) through part of April 2018 in defending against Regeneron's lawsuit. The Kirkland's billing statements are compiled into exhibits by year, such that Exhibit B.1 are statements from 2014, Exhibit B.2 are statements from 2015, Exhibit B.3 are statements from 2016, and so on. Detailed information about hours billed, billing rates, and descriptive narratives can be found in Exhibits B.1-B.6. The descriptive narratives in the detailed time entries included in these exhibits reflect the actual, contemporaneous narratives written by Kirkland timekeepers and entered into Kirkland's time and billing system on a regular basis. Merus has paid Kirkland's fees that were invoiced between April 2014 and December 2017.

5. The Kirkland billing statements submitted are directed to two internal matter designations: "17497-1" and "17497-2." Matter 17497-1 contains billing records for the majority of the work related to Merus' substantive defense from April 2014 until the present.[2] Matter 17497-2 contain billing records for work related to Regeneron's extensive third-party discovery requests directed to Merus investors and initial work concerning Merus' inequitable conduct counterclaim. Exhibits B.1-B.5 and B.7 are associated with matter 17497-1, and Exhibit B.6 is associated with matter 17497-2. As the fees documented under both matters were directly related to the instant litigation and necessitated by Regeneron's litigation tactics, Merus is seeking and should recover its fees for both matters. Finally, as indicated by full redactions on

---

[1] Exhibit B.8 is Kirkland's billing statements actually sent to Merus for work performed in April to November of 2014; however, they do not include descriptive narratives. Kirkland's billing statements in Exhibit B.1 were generated for 2014 to include descriptive narratives. The amounts from Exhibit B.1 were used in the calculation of fees.

[2] Due to practical constraints in filing these papers, we submit invoices for fees only through part of April 2018. Merus reserves the right to pursue the remaining fees associated with this filing in any supplemental fee filings.

certain Kirkland billing statements, fees unrelated to the substantive defense of the lawsuit have been removed and deducted from the total fees.

6. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

7. Attached as Exhibits W.1-W.4 is a compilation of reports for 2014, 2015, 2016 and 2017, detailing time written down or written off by Kirkland during the course of the fee arrangements discussed above. This time was not included in Kirkland billing statements from Exhibits B.1-B.7. ████████████████████████████████████████████████████.

8. Kirkland additionally records all matter-related costs and expenses in its time and billing system on a regular and itemized basis. For the purposes of this motion, Kirkland has prepared a list of these costs and expenses, attached as Exhibits C.1-C.5, which are true and correct copies of Kirkland's cost reports from its time and billing system detailing and itemizing actual costs incurred each month from April 2014 through part of April 2018. These costs included, for example, travel, meals, lodging, photocopying, computer legal research, postage, facsimiles, preparation of exhibits, and other related services. As indicated by full redactions on

certain entries, cost and expenses unrelated to the substantive defense of the lawsuit have been removed and deducted from the total costs and expenses. The cost and expenses identified in the Kirkland billing statements were not used for the purposes of this motion and have been appropriately redacted. Merus has paid Kirkland's costs and expenses that were invoiced between April 2014 and December 2017.

9.  Attached as Exhibits D-O is a compilation of invoices that were billed directly to Merus for case-related costs and expenses, including travel, meals, lodging, trial graphics, e-discovery, document retrieval, legal services obtained from other law firms relating to this litigation, and other related services.[3] These invoices document fees and costs from the following sources:

(a) ████████████████████████████████████████
████████████████████████████████████████
██████████████ ████████████████████████
██████████████████████.

(b) ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████.

---

[3] Invoiced amount identified in Euros have been converted to U.S. Dollars using an exchange rate of €1= $1.2371 USD as reported by the Wall Street Journal at 10:00 AM ET on April 19, 2018.

(c) ████████████████████████████████
████████████████████████████████████
████████████████████.

(d) ████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████.

(e) ████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██

██ ████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████.

██ ████████████████████████████████
████████████████████████████████████
██

██ ████████████████████████████████
████████████████████████████████████
████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████

(i) ████████████████████████████

███████████████████████████████████

████████████████████████████

10. Exhibit P contains true and correct invoices reflecting expert fees and expenses incurred in connection with the work of scientific expert witness Dr. Raphael Clynes. Dr. Clynes was retained as an immunological expert to opine on claim construction issues relevant to construing claim terms in this case, and indefiniteness of a term present in each claim of the patent in suit. Dr. Clynes is a board-certified medical hematologist and medical oncologist, and has previously served as the director of an immunology group at both the Columbia Center and at the Herbert Irving Cancer Center. After being retained in this matter, he started working as a researcher at Bristol Meyers Squibb, focusing his research on antibody compounds in therapeutic development that are being considered for clinical investigation as immuno-therapeutics in cancer. ████████████████████████████

11. Exhibit Q contains true and correct invoices reflecting expert fees and expenses incurred in connection with the work of scientific expert witness Dr. Geoffrey Davis. Dr. Davis is an immunological expert who opined on, *inter alia*, the materiality of Regeneron's withheld

references and the inaccuracies of the presentation Regeneron's prosecution agents provided to the USPTO during the prosecution of the patent in suit. Dr. Davis holds a Ph.D. in Immunology from the University of California, San Francisco, and did his postdoctoral training at University of Texas Southwestern Medical School in Dallas. He has held numerous positions, including as a university professor, and principal investigator and director of immunology at both Cell Genesys, Inc. and Repligen Corp. Dr. Davis is also the founder of three biotechnology companies: Abgenix, Inc., a leading provider of therapeutic antibodies; Angelica Therapeutics, Inc., a developer of fusion toxins; and Angiocrine Bioscience, Inc, which focuses on vascular biology and research tools. ███████████████████████████████████████
███████

12. Exhibit R contains true and correct invoices reflecting expert fees and expenses incurred in connection with the work of expert witness John Doll. Mr. Doll was retained as a testifying expert to provide opinions relevant to Regeneron's inequitable conduct before the United States Patent and Trademark Office ("USPTO"). Mr. Doll opined on USPTO, practice and procedure, and considered how the USPTO would have handled the information withheld by Regeneron during prosecution. Mr. Doll holds Chemistry and Physics degrees from Bowling Green State University and a Master of Science degree in Physical Chemistry from The Pennsylvania State University. He worked at the USPTO for over 35 years, including in roles such as Patent Examiner, Director of the USPTO group responsible for all patent examinations relating to biotechnology, and Deputy Under Secretary of Commerce for IP and Deputy Director of the USPTO. He has also received numerous performance and achievement awards during his service at the USPTO. ███████████████████████████████████████
███████

13. Exhibit S contains true and correct invoices reflecting expert fees and expenses incurred in connection with the work of Dr. Joan Ellis, who was retained by Merus in this litigation. Dr. Joan Ellis holds a Ph.D. in Molecular Parasitology and Biochemistry from New York University, and a J.D. from The George Washington University in Washington D.C. Dr. Ellis has also worked as a patent examiner for the USPTO, has worked as a patent prosecutor in the biotechnology industry, and has provided litigation support services such as acting as an expert witness in litigations involving patent office procedure and obviousness. She acted as a consulting expert in this same manner for Merus in this litigation. ▮

14. Exhibit T contains true and correct invoices reflecting expert fees and expenses incurred in connection with the work of scientific expert Dr. Randal Kaufman, who was retained by Merus in this litigation. Dr. Kaufman holds a Ph.D. in Pharmacology from Stanford University. He is currently the president and CEO of Kaufman Genetics Inc., the Director of Degenerative Disease Research at the Sanford Burnham Medical Research Institute in La Jolla, CA, and a professor at the Department of Pharmacology as the University of California in San Diego. Dr. Kaufman reviewed Regeneron's expert declaration from opposing expert Dr. Ravetch and provided expertise related to the scientific matters discussed in the Ravetch declaration. ▮

15. Exhibit U is a true and correct invoice for consulting expert services of former Judge Paul R. Michel. Judge Michel previously served as a Judge for United States Court of Appeals for the Federal Circuit. Judge Michel reviewed the appeal briefs, court opinions, and amicus briefs from this case. Judge Michel helped conduct a moot court at Kirkland's offices

which helped prepare the Kirkland team for the appeal before the Federal Circuit. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

16. Exhibit V is a true and correct invoice for consulting expert services of former Judge Randall R. Rader.  Judge Rader previously served as Chief Judge for the United States Court of Appeals for the Federal Circuit.  Judge Rader reviewed the appeal briefs filed in this case and participated in a mock hearing and debriefing to aid Kirkland's appellate preparation before the Federal Circuit. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

17. Exhibit CC is a compilation of biographies for current or former Kirkland attorneys that worked on this matter.[4]  These attorneys billed Merus at the standard hourly rates commensurate with their level of skill and years of experience in the field. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



18. Partner-level attorneys leading up to trial predominantly included myself and Peter B. Silverman, who constituted the day-to-day managers of the case.  Further support during the pretrial phase of the litigation included Partners Jeanna Wacker and James McConnell,[5] with e-discovery expertise provided by our Of Counsel Michelle Six.

---

[4] All of the listed partners and associates are current Kirkland attorneys, except for Mr. Silverman, Mr. Desai and Mr. Elkind.  The biographies of Mr. Silverman, Mr. Desai and Mr. Elkind were taken from internal archived versions from before they left the firm.

[5] Mr. McConnell was named a partner in October 2016, and his billing rate has been adjusted accordingly per Kirkland's typical partner billing practices.

19. Leading up to trial, our team expanded to include Partners Thomas Fleming, David Draper, with Daniel Forchheimer who assisted on post-trial briefing. Additional strategic support was provided by Partners Leora Ben-Ami and David McDonald. At the Appellate level, the principal partner-level attorneys included myself, Peter B. Silverman, and Jonathan C. O'Quinn, with other partner-level attorneys contributing their time and expertise including William H Burgess and Leslie Schmidt. Alongside the partner-level attorneys, the associates who worked to support of Merus' defense included Mira Mulvaney,[6] Ashley Ross, Aaron Resetarits, Jennifer Liu, Jessica Lam, Justin Bova, Megan McKeown, Christopher Ilardi, Saunak Desai, and Stephen Elkind.

20. In addition to the Kirkland attorney team, a staff of litigation paralegals (titled as "Legal Assistant" or "Paralegal" in the billing records), support staff, and researchers contributed their services to this matter. The following individuals rendered such services in this case:

(a) Paralegal Patrice Boucaud was the lead paralegal that assisted with Merus' litigation against Regeneron. Patrice worked for Kirkland from 2012–2018 as a paralegal and she performed the majority of the day-to-day tasks on this litigation.

(b) Other paralegals/legal assistants and scientific advisors who worked on this case included those in the table below, along with their years of experience at Kirkland:

| Name | Employment Range |
|---|---|
| Erika Dillon (paralegal) | 2013–Present |
| Alvaro Parrado (paralegal) | 2012–Present |
| Nancy K Horstman (scientific advisor) | 2014–2017 |

---

[6] Ms. Mulvaney was named a partner in October 2017, and her billing rate has been adjusted accordingly per Kirkland's typical partner billing practices.

10

| Name | Employment Range |
|---|---|
| William Jarboe (paralegal) | 2013–2015 |
| Christophe Michoud (scientific advisor) | 2013–Present |
| Lauren Killeen (paralegal) | 2012–2015 |
| Hyunjin Kim (paralegal) | 2012–2015 |
| Laura Kim (paralegal) | 2015–2017 |
| Robert Leonard (paralegal) | 2006–Present |
| Junelia J. Edwards (paralegal) | 2010–Present |
| Nadia Lee (paralegal) | 2013–Present |
| Ravana Tsang (paralegal) | 2013–Present |
| Michael E Dobszewicz (paralegal) | 2001–Present |

(c) Other litigation support costs shown in the documentation represent costs of various specialists, such as case management staff, administrative staff, trial technology specialists, research services, and document preparation and production. The individuals who worked in this capacity on this case included Thomas Mangne, Carmelo Soto, Jonathan Rousseau, Katelyn Ye, Kate McCarthy, Igor Shulkin, Jordan B Verrilli, Benjamin Wirchin, Elizabeth Klein, Audrey Schlicht, Amanda DiGeorge, Raul D Catungal, Roman Bielski, Kenneth Gazda, Elizabeth Miller, Laurie K. Dombrowski, and Urszula Nowak.

21. Given the magnitude and complexity of this multi-year litigation, exacerbated by Regeneron's abusive litigation tactics, as well as the expertise of my firm and the lawyers and experts who worked on this matter, I believe that the fees and costs incurred by Merus have been reasonable and necessary for resolution of the matter. As explained in detail in Merus' brief in support of the instant request, all fees and costs listed herein were incurred as a result of Regeneron's litigation and the tactics it employed.

22. The billing rates charged by Kirkland are in-line with prevailing market rates charged by Kirkland's peer firms nationwide for similar services. This is supported by the American Intellectual Property Law Association's *Report of the Economic Survey* ("AIPLA Survey"), a biannual report analyzing economic aspects of intellectual property practice, including attorney billing rates and costs for various types of intellectual property litigation. Attached as Exhibits X-Z are true and correct copies of excerpts of the AIPLA Surveys for 2013, 2015, and 2017. Additionally, attached as Exhibit AA is a true and correct copy of excerpts of the *Valeo 2018 Intellectual Property Litigation Hourly Rate Report*, an annual publication by Valeo Partners ("Valeo Report") about market billing rates for hundreds of firms across the U.S. These publications confirm that Kirkland's billing rates for the attorneys who worked on this case are in-line with the range of partner and associate billing rates for attorneys of law firms of similar size during the relevant time period.

23. The AIPLA Surveys also include tables summarizing the average litigation costs in patent infringement actions. *See, e.g.*, Ex. X at I-136, "Total Cost" includes "outside legal and paralegal services, local counsel, associates, paralegals, travel and living expenses, fees and costs for court reporters, photocopies, courier services, exhibit preparation, analytical testing, expert witnesses, translators, surveys, jury advisors, and similar expenses." *E.g.*, Ex. X at 6. For patent infringement lawsuits from firms with 60 or more attorneys where more than $25 million is at risk, the average litigation costs inclusive of discovery, motions, pretrial, trial, post-trial, and appeal was approximately $7.2 million, $6.2 million, and $5.0 million for 2012, 2014, and 2016, respectively. Ex. X. at I-136, Ex. Y at I-112, Ex. Z at I-122.[7]

---

[7] Due to the cloud Regeneron's litigation cast of Merus' business, the case justifiably may be considered one in which more than $25 million was at risk, albeit not based upon the merits of the case or any actual damages Regeneron could have claimed based on the patent in suit

24. These total fees and costs from such suits are in-line with the amounts requested by Merus, in relation to the services that were provided to Merus that directly resulted from and were reasonably necessary to defend against this lawsuit. This is particularly true given Regeneron's litigation misconduct, which caused an unnaturally arduous discovery, post-trial, and appeal process.

25. Attached as Exhibit BB is a compilation of accolades that Kirkland's intellectual property litigation department received in the last several years. These include, for example: (1) a 2017 IP Litigation Department of the Year award from the *New York Law Journal*; (2) a top-tier firm ranking in U.S. patent litigation by *The Legal 500 United States*; (3) the only firm in 2017 to receive all national tier 1 rankings in each category from *Managing Intellectual Property*, which included Patent Contentious, ITC, Life Sciences, and Copyright; and (4) Kirkland's #1 ranking from Law360 out of 50 firms that were selected for outstanding domestic and international victories in litigation across all areas.

26. Exhibit A is a summary of the bills and invoices described above, with citations to the appropriate exhibits for supporting documentation indicated therein:

(a) **Tabs 1A & 1B** provides an overview of the amount of fees billed by Kirkland attorneys, paralegals, and support staff, on a monthly basis for matters 1 (17497-1) and 2 (17497-2), all of which Merus incurred in this case. The table on the bottom of Tab 1A sums the total amount of attorneys' fees sought. As indicated by full redactions on certain Kirkland billing statements, the fees unrelated to the substantive defense of the lawsuit have been removed and deducted from the total fees. These amounts are reflected in the row labeled "Removed."

  (b) **Tabs 2A & 2B** provide an approximation of the total number of hours worked on matters 1 and 2 by Kirkland attorneys, paralegals, and support staff, not reflecting all write offs and write downs.

  (c) **Tabs 3A & 3B** provide an overview of the total amount of costs and expenses incurred by Kirkland or by other vendors/service providers.  The table on the bottom of Tab 3A sums the total amount of costs and expenses sought.  As indicated by full redactions on certain entries, the costs and expenses unrelated to the substantive defense of the lawsuit have been removed and deducted from the total costs and expenses.  These amounts are reflected in the row labeled "Removed."

  (d) **Tab 4** provides an overview of expert fees and expenses sought.

  (e) **Tab 5** provides an overview of the amount of attorney fees written off or written down during the litigation.

27. Entries in the exhibits attached hereto have been thoroughly reviewed and redacted as necessary due to attorney-client privilege, work product protection, and/or other applicable privileges, protections, or immunities.  These materials are designated "Confidential" or "Highly-Confidential-Outside Counsel Eyes Only" under the Protective Order ordered by the Court on May 19, 2014.  Merus reserves all rights under the "claw back" provision of that order set forth in paragraph 12.  D.I. 49 ¶ 12.

28. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that all the attached fees and costs were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed.

Executed on April 20, 2018, in New York, New York.

_____
Patricia A. Carson